_No. 13-cr-_ _____

## UNITED STATES DISTRICT COURT

### Eastern District of Pennsylvania

### Criminal Division

### THE UNITED STATES OF AMERICA

vs.

ANNA MUDROVA
YURY GERASYUK, a/k/a "Yury Mudrov,"
MIKHAIL VASSERMAN, a/k/a "Miska,"
IRINA VASSERMAN
ALEKSANDR VASSERMAN
KHUSEN AKHMEDOV, a/k/a "Hass,"
VALERIY DAVYDCHIK AND
PENN CHOICE AMBULANCE INC.

### INDICTMENT

Counts

18 U.S.C. § 1349 (conspiracy to commit health care fraud - 1 count)
18 U.S.C. § 1035 (false statements in health care matters - 15 counts)
18 U.S.C. § 1028A (aggravated identity theft - 5 counts)
42 U.S.C. § 1320a-7b(b)(2)(B) (kickback payments - 6 counts)
18 U.S.C. § 1957 (money laundering - 3 counts)
18 U.S.C. § 2 (aiding and abetting )

A true bill.

-------------------------------------------------

Foreman

Filed in open court this _____ day,

of _____ A.D. 20 _____

-------------------------------------------------

Clerk

Bail, $ _____

-------------------------------------------------

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 13-_____ |
| v. | : | DATE FILED: _____ |
| ANNA MUDROVA | : | VIOLATIONS: |
| YURY GERASYUK, | : | 18 U.S. C. § 1349 (conspiracy to |
|     a/k/a "Yury Mudrov," | | commit health care fraud – 1 count) |
| MIKHAIL VASSERMAN, | : | 18 U.S.C. § 1035 (false statements |
|     a/k/a "Miska," | | in health care matters - 15 counts) |
| IRINA VASSERMAN | : | 18 U.S.C. § 1028A (aggravated |
| ALEKSANDR VASSERMAN | | identity theft - 5 counts) |
| KHUSEN AKHMEDOV, | : | 42 U.S.C. § 1320a-7b(b)(2)(B) |
|     a/k/a "Hass," | | (kickback payments - 6 counts) |
| VALERIY DAVYDCHIK | : | 18 U.S.C. § 1957 (money |
| PENN CHOICE AMBULANCE INC. | | laundering - 3 counts) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | : | Notices of forfeiture |

# INDICTMENT

## COUNT ONE

### (Conspiracy)

THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

**A.**     <u>The Defendants</u>

    1.    PENN CHOICE AMBULANCE INC. ("PENN CHOICE"), with a business address of 9301Neil Road, Unit B, Philadelphia, Pennsylvania 19115, was incorporated in the Commonwealth of Pennsylvania on October 22, 2008.

1

2. Defendant PENN CHOICE operated from two locations: 3021 Franks Road, Huntington Valley, Pennsylvania 19006, and 3907 Hartzdale Drive, Suite 708, Camp Hill, Pennsylvania 17011.

3. Defendant PENN CHOICE operated five ambulances.

4. Defendant PENN CHOICE was owned by its president, defendant ANNA MUDROVA. Defendant YURY GERASYUK, a/k/a "Yury Mudrov," who was defendant MUDROVA's husband, transported patients from the Camp Hill, Pennsylvania location. Defendant MIKHAIL VASSERMAN, a/k/a "Miska," and defendant IRINA VASSERMAN, also husband and wife, managed daily operations at the Huntington Valley, Pennsylvania location. Defendants MUDROVA, GERASYUK, MIKHAIL VASSERMAN and IRINA VASSERMAN were responsible for hiring PENN CHOICE ambulance drivers and emergency medical technicians, including defendants ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, and KHUSEN AKHMEDOV a/k/a "Hass."

**B.    The Medicare Program**

5. Medicare was a federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services. Medicare helped to pay for reasonable and medically necessary medical services for people aged 65 and older and some persons under 65 who are blind or disabled. Medicare was divided into several parts, including Part B, outpatient services.

6. Under Medicare Part B, payment was made to providers of outpatient services. Such providers included ambulance transportation providers.

2

7.      CMS contracted with private insurance companies under Part B to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers and suppliers.  Once contracted to process Medicare Part B claims, these private insurance companies were known as Medicare Administrative Contractors ("MAC").  CMS contracted with Highmark Medicare Services ("Highmark"), now Novitas Solutions (Highmark and Novitas Solutions are collectively referred to as "Novitas" in this indictment) to be the MAC to process and pay Medicare Part B claims in the Commonwealth of Pennsylvania.

8.      Novitas was required to process applications from medical providers seeking to enroll in the Medicare program.  Once the application was reviewed and approved, a provider was enrolled and issued a unique provider number.  The provider number was required on all claims submitted by the provider to the carrier for payment.

9.      Upon enrollment, providers were issued a provider manual that generally described the requirements to participate as a provider in the Medicare program.  Providers also periodically received newsletters advising them of additional requirements for participation and instructions concerning which services were covered or not covered by Medicare and the prerequisites for coverage.

C.      **Payment for Medicare Claims to Providers**

10.     Under regulations promulgated by Medicare, providers and suppliers of Medicare Part B services were required to submit, within one year from the date of service, claims to the MACs on behalf of Medicare beneficiaries.  During this period, providers could file their Medicare Part B claims either electronically or in paper form.

3

11.     When a provider submitted a claim for payment to Medicare for ambulance transport services, the claim was required to include information such as the beneficiary's name, address, unique identification number, the date and place of service, and the type of services rendered, which were identified by individual codes. The form used by a provider to submit claims was a standard form known in the industry as a Health Care Financing Administration 1500 (HCFA-1500) form or a Center for Medicare and Medicaid Services 1500 (CMS-1500) form.

12.     Providers were required to certify that (1) the services provided were medically necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information contained in the form was true, accurate, and complete. The provider number was included as a part of each submission.

13.     Medicare paid for regularly scheduled, non-emergency transports to certain locations, including dialysis centers, only if either: (a) the beneficiary was bed-confined and it was documented that the beneficiary's condition was such that other methods of transportation were contraindicated (*i.e.*, bed confinement alone was not itself a sufficient basis for such transportation); or (b) the beneficiary's medical condition, regardless of bed-confinement, was such that transportation by ambulance was medically required. For a beneficiary to be bed-confined, the following criteria were required to be met: (1) the beneficiary was unable to get up from bed without assistance; (2) the beneficiary was unable to "ambulate," and (3) the beneficiary was unable to sit in a chair or wheelchair.

4

14.    In all cases, CMS required that appropriate documentation be kept on file and, upon request, presented to the carrier.  For example, ambulance service providers were required to create a record for each transport, generally known as a "trip sheet[1]", which memorialized the attendant's observations about the patient's condition that demonstrated that ambulance transport was medically necessary.  Medicare also required ambulance providers to obtain, prior to transport, a physician's written order certifying the need for an ambulance for scheduled non-emergency transports.  A physician's order was referred to as a Physician's Medical Necessity Certification ("PMNC") or Physician Certification Statement ("PCS").  CMS made clear that neither the presence nor absence of a signed physician's order for an ambulance transport proved (or disproved) whether the transport was medically necessary.  The ambulance service had to meet all program coverage criteria in order for payment to be made.

15.    Medicare reimbursement to providers was made by either an electronic funds transfer ("EFT") or by check payable to the provider and delivered by U.S. mail.  PENN CHOICE received its payments from Medicare by ETF.

16.    ETFs to PENN CHOICE were made by Novitas, on behalf of Medicare, to a TD Bank account that was titled to PENN CHOICE and which listed defendant ANNA MUDROVA as the only authorized signer.

### The Conspiracy

17.    From in or about September 2009 through in or about January 2013, in the Eastern District of Pennsylvania and elsewhere, defendants

---

[1] "Trip sheets" were also referred to as "patient care reports" and "run sheets".

ANNA MUDROVA,
YURY GERASYUK,
a/k/a "Yury Mudrov,"
MIKHAIL VASSERMAN,
a/k/a "Miska,"
IRINA VASSERMAN,
ALEKSANDR VASSERMAN,
VALERIY DAVYDCHIK,
KHUSEN AKHMEDOV,
a/k/a "Hass," and
PENN CHOICE AMBULANCE INC.

conspired and agreed, together and with others known and unknown to the grand jury, to

knowingly and willfully execute a scheme to defraud the Medicare health benefit program, and

to obtain money and property of Medicare by means of false and fraudulent pretenses,

representations, and promises, in connection with the delivery of and payment for health care

benefits, items and services, by submitting and causing to be submitted fraudulent health care

insurance claims, in violation of Title 18, United States Code Section 1347.

### Manner and Means

18.     It was part of the conspiracy that defendants ANNA MUDROVA, YURY

GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA

VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN

AKHEDOV, a/k/a "Hass," and PENN CHOICE transported by ambulance, or directed other

PENN CHOICE employees to transport by ambulance, patients who could walk or be safely

transported by other means, falsely representing to Medicare that these patients required

transportation by ambulance.

19.     It was further part of the scheme to target and recruit patients who attend

dialysis treatment, which is typically required three times per week, thereby allowing PENN

6

CHOICE to bill extensively for these patients.

20.     Ambulatory patients were directed to get onto a stretcher when the patients were able to walk or be moved by wheelchair.  Often, PENN CHOICE transported by ambulance two ambulatory patients together in the same vehicle; one patient sat on the stretcher and the other on a jump seat.  PENN CHOICE transported a patient who rode in the front passenger seat of the ambulance and smoked cigarettes during the trip.

21.     Defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE, submitted, or caused to be submitted, fraudulent claims to Medicare for medically unnecessary ambulance services.

22.     Defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE employees acting at their direction, falsified "trip sheets" by causing those documents to reflect that patients needed to be transported by stretcher and that the patient required continuous medical monitoring during transport.  In fact, patients often walked to the ambulance and no medical monitoring of any kind was performed during the trip.

23.     Defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE paid and facilitated the payment of illegal kickbacks to patients, which ranged from

7

$100 to $500 per month on average, to induce the patient to be transported by PENN CHOICE, even though transport by ambulance was not medically necessary.

24. Defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE created the appearance of a legitimate medical transport business while actually running mechanically unsound and unsafe ambulances without the required medical equipment on board. PENN CHOICE ambulances failed to pass Pennsylvania state inspection for failing to have the proper life-saving equipment on board.

25. Defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE provided patients completely free ambulance transport in order to induce them to use PENN CHOICE. PENN CHOICE did not collect co-payments from patients even though it was required to do so by Medicare.

26. Defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE submitted and caused to be submitted claims to Medicare for patients who were transported by another ambulance company that Medicare had not approved as a provider. PENN CHOICE represented to Medicare that it had provided the ambulance transport for these patients when, in fact, it had not. PENN CHOICE represented to Medicare that ambulance

8

transport for the patient was medically necessary without any first-hand knowledge about the patient's condition.

27.     As a result of this fraudulent scheme, defendants ANNA MUDROVA, YURY GERASYUK a/k/a "Yury Mudrov," MIKHAIL VASSERMAN, a/k/a "Miska," IRINA VASSERMAN, ALEKSANDR VASSERMAN, VALERIY DAVYDCHIK, KHUSEN AKHMEDOV, a/k/a "Hass," and PENN CHOICE submitted, or caused to be submitted, approximately $3.6 million in fraudulent claims to Medicare and caused Medicare to incur losses of more than $1.5 million.

### Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendants

**ANNA MUDROVA,**
**YURY GERASYUK,**
**a/k/a "Yury Mudrov,"**
**MIKHAIL VASSERMAN,**
**a/k/a "Miska,"**
**IRINA VASSERMAN,**
**ALEKSANDR VASSERMAN,**
**VALERIY DAVYDCHIK,**
**KHUSEN AKHMEDOV,**
**a/k/a "Hass," and**
**PENN CHOICE AMBULANCE INC.**

committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.   From in or about September 2009 through in or about January 2013, defendant ANNA MUDROVA secured a Medicare provider number for PENN CHOICE and submitted to Medicare claims for PENN CHOICE for medically unnecessary ambulance transport services.

9

2.      From in or around September 2009 through in or about January 2013,
defendant YURY GERASYUK was a PENN CHOICE ambulance driver.  Defendant
GERASYUK transported ambulatory patients and falsified "trip sheets" related to patient
transport.

3.      From in or around April 2010 through in or about January 2013, defendant
MIKHAIL VASSERMAN facilitated kickbacks to patients by giving PENN CHOICE
ambulance drivers and attendants envelopes containing cash to deliver to specified patients.

4.      From in or around April 2010 through in or about January 2013, defendant
IRINA VASSERMAN scheduled Medicare beneficiaries for transport to dialysis by PENN
CHOICE ambulance.  Defendant IRINA VASSERMAN secured the patient's unique Medicare
beneficiary number used to submit claims for medically unnecessary ambulance transport.

5.      From in or around April 2011 through in or about January 2013, defendant
ALEKSANDR VASSERMAN was employed by PENN CHOICE as an ambulance driver.
Defendant ALEKSANDR VASSERMAN transported ambulatory patients and delivered
kickback payments to patients.

6.      From in or around April 2011 through in or about January 2013, defendant
VALERIY DAVYDCHIK was employed by PENN CHOICE as an ambulance driver.
Defendant DAVYDCHIK transported ambulatory patients and delivered kickback payments to
patients.

7.      From in or around April 2011 through in or about June 2012, defendant KHUSEN AKHMEDOV was employed by PENN CHOICE as an Emergency Medical Technician.  Defendant AKHMEDOV transported ambulatory patients, delivered kickback payments to patients and falsified 'trip sheets" related to patient transport.

8.      From in or around September 2009 through in or about January 2013, defendant PENN CHOICE caused fraudulent insurance claims to be submitted to Medicare for each of the patients identified by initials below, among others, on the approximate date listed below, among others, for ambulance services that were not medically necessary:

| Patient Initials | Approximate Date of Transportation | Approximate Claim Amount | Approximate Payment Date | Health Care Benefit Program |
|---|---|---|---|---|
| L.R | 11/16/2010 | $920 | 12/08/2010 | Medicare |
| R.O. | 03/15/2012 | $832 | 03/30/2012 | Medicare |
| R.T. | 03/15/2012 | $832 | 03/30/2012 | Medicare |
| M.S. | 09/27/2011 | $848 | 10/14/2011 | Medicare |
| J.E. | 03/14/2012 | $832 | 03/30/2012 | Medicare |
| J.N. | 09/25/2012 | $813 | 10/10/2012 | Medicare |
| G.D. | 07/08/2011 | $864 | 07/25/2011 | Medicare |
| R.K. | 06/01/2012 | $880 | 06/19/2012 | Medicare |
| T.C. | 03/23/2012 | $832 | 04/09/2012 | Medicare |

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIVE

### (False Statements Relating to Health Care Matters)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2.      From in or about September 2009 through in or about January 2013, in the Eastern District of Pennsylvania, the Middle District of Pennsylvania, and elsewhere, defendants

**ANNA MUDROVA,**
**YURY GERASYUK,**
**a/k/a "Yury Mudrov, and**
**PENN CHOICE AMBULANCE INC.**

in matters involving the health care benefit programs listed below, falsified, concealed, or covered up, and aided and abetted the falsification, concealment, or covering up, by trick, scheme, or device, a material fact in connection with the delivery of or payment for health care benefits, items, or services in that the defendants created or caused to be created false documents, that is a "trip sheet," for ambulance transportation provided to the patient identified by initials below, on the approximate dates listed below (each false statement constituting a separate count of this indictment), that concealed and falsely described the true condition of the individual who was transported by ambulance when, in fact, ambulance services were not medically necessary for the patient:

| Count | Patient Initials | Approximate Date of False Statement on Trip Sheet |
|-------|------------------|---------------------------------------------------|
| 2 | L.R. | 01/28/2010 |
| 3 | L.R. | 11/16/2010 |
| 4 | L.R. | 11/20/2010 |
| 5 | L.R. | 06/23/2011 |

All in violation of Title 18, United States Code, Sections 1035 and 2

## COUNTS SIX THROUGH SIXTEEN

### (False Statements Relating to Health Care Matters)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

      2.      From in or about September 2009 through in or about January 2013, in the

Eastern District of Pennsylvania and elsewhere, defendants

**ANNA MUDROVA,**
**YURY GERASYUK,**
**a/k/a "Yury Mudrov,"**
**MIKHAIL VASSERMAN,**
**a/k/a "Miska,"**
**IRINA VASSERMAN,**
**ALEKSANDR VASSERMAN,**
**VALERIY DAVYDCHIK,**
**KHUSEN AKHMEDOV,**
**a/k/a "Hass," and**
**PENN CHOICE AMBULANCE INC.**

in matters involving the health care benefit programs listed below, falsified, concealed, or

covered up, and aided and abetted the falsification, concealment, or covering up, by trick,

scheme, or device, a material fact in connection with the delivery of or payment for health care

benefits, items, or services in that the defendants created or caused to be created false documents,

that is a "trip sheet", for ambulance transportation provided to the patients identified by initials

below, on the approximate dates listed below (each false statement constituting a separate count

of this indictment), that concealed and falsely described the true condition of individuals who

were transported by ambulance when, in fact, ambulance services were not medically necessary

for the patient:

14

| Count | Patient Initials | Approximate Date of False Statement on Trip Sheet |
|-------|------------------|---------------------------------------------------|
| 6 | R.O | 03/15/2012 |
| 7 | R.T | 03/15/2012 |
| 8 | M.S | 09/27/2011 |
| 9 | M.S. | 03/24/2012 |
| 10 | J.E. | 12/28/2011 |
| 11 | J.E. | 03/14/2012 |
| 12 | G.D. | 07/08/2011 |
| 13 | G.D. | 08/01/2011 |
| 14 | R.K. | 06/01/2012 |
| 15 | S.S. | 06/13/2012 |
| 16 | T.C. | 03/23/2012 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

## COUNTS SEVENTEEN THROUGH TWENTY ONE

### (Aggravated Identity Theft)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

      2.      On or about the dates listed below, in the Eastern District of Pennsylvania and elsewhere, defendants

**ANNA MUDROVA,**
**MIKHAIL VASSERMAN,**
**a/k/a "Miska," and**
**PENN CHOICE AMBULANCE INC.**

knowingly and without lawful authority used a means of identification of another person, and aided and abetted the use of the means of identification of another person, that is the unique beneficiary number for patients for whom claims were submitted to Medicare, during and in relation to a health care fraud offense enumerated in violation of Title 18, United States Code, Section 1028A:

| Count | Patient Initials | Approximate Date of Use Of Patient's Medicare Beneficiary Number to Submit Fraudulent Claim |
|---|---|---|
| 17 | L.H. | 08/16/2011 |
| 18 | R.R. | 12/08/2011 |
| 19 | A.E. | 01/16/2012 |
| 20 | V.P. | 02/10/2012 |
| 21 | A.E. | 02/10/2012 |

16

All in violation of Title 18, United States Code, Section 1028A(a)(1), (c)(5).

## COUNT TWENTY TWO

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

      2.      On or about December 28, 2011, in the Eastern District of Pennsylvania,

defendants

### VALERIY DAVYDCHIK and
### PENN CHOICE AMBULANCE INC.

knowingly and willfully offered and paid,  caused to be offered and paid, and aided and abetted

the payment of, cash remuneration, that is a kickback, to patient J.E. to induce patient J.E. to be

transported by PENN CHOICE ambulance even though transport by ambulance was not

medically necessary.

      In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title

18, United States Code, Sections 2(a) and (b).

## COUNT TWENTY THREE

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

2.      On or about January 25, 2012, in the Eastern District of Pennsylvania,

defendants

**KHUSEN AKHMEDOV,**
**a/k/a "Hass," and**
**PENN CHOICE AMBULANCE INC.**

knowingly and willfully offered and paid,  caused to be offered and paid, and aided and abetted

the payment of, cash remuneration, that is a kickback, to patient T.C. to induce patient T.C. to be

transported by PENN CHOICE ambulance even though transport by ambulance was not

medically necessary.

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title

18, United States Code, Sections 2(a) and (b).

## COUNT TWENTY FOUR

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.       Paragraphs 1-16 and 18-27 of Count One are incorporated here.

        2.       On or about February 21-22, 2012, in the Eastern District of Pennsylvania,

defendants

**MIKHAIL VASSERMAN,**
**a/k/a "Miska,"**
**KHUSEN AKHMEDOV,**
**a/k/a "Hass," and**
**PENN CHOICE AMBULANCE INC.**

knowingly and willfully offered and paid, caused to be offered and paid, and aided and abetted

the payment of, cash remuneration, that is a kickback, to patient T.C. to induce patient T.C. to be

transported by PENN CHOICE ambulance even though transport by ambulance was not

medically necessary.

        In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title

18, United States Code, Sections 2(a) and (b).

20

## COUNT TWENTY FIVE

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

      2.      On or about March 15-16, 2012, in the Eastern District of Pennsylvania, defendants

**ANNA MUDROVA,**
**MIKHAIL VASSERMAN,**
**a/k/a "Miska,"**
**IRINA VASSERMAN,**
**KHUSEN AKHMEDOV,**
**a/k/a "Hass," and**
**PENN CHOICE AMBULANCE INC.**

knowingly and willfully offered and paid, caused to be offered and paid, and aided and abetted the payment of, cash remuneration, that is a kickback, to patient T.C. to induce patient T.C. to be transported by PENN CHOICE ambulance even though transport by ambulance was not medically necessary.

      In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Sections 2(a) and (b).

21

## COUNT TWENTY SIX

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1-16 and 18-27 of Count One are incorporated here.

      2.      On or about March 23, 2012, in the Eastern District of Pennsylvania,

defendants

**ALEKSANDR VASSERMAN,**
**KHUSEN AKHMEDOV,**
**a/k/a "Hass," and**
**PENN CHOICE AMBULANCE INC.**

knowingly and willfully offered and paid, caused to be offered and paid, and aided and abetted

the payment of, cash remuneration, that is a kickback, to patient T.C. to induce patient T.C. to be

transported by PENN CHOICE ambulance even though transport by ambulance was not

medically necessary.

      In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title

18, United States Code, Sections 2(a) and (b).

## COUNT TWENTY SEVEN

### (Kickbacks to Patients)

**THE GRAND JURY FURTHER CHARGES THAT:**

          1.        Paragraphs 1-16 and 18-27 of Count One are incorporated here.

          2.        On or about June 16, 2011, in the Eastern District of Pennsylvania, defendants

### ALEKSANDR VASSERMAN and
### PENN CHOICE AMBULANCE INC.

knowingly and willfully offered and paid, caused to be offered and paid, and aided and abetted the payment of, cash remuneration, that is a kickback, to patient M.S. to induce patient M.S. to be transported by PENN CHOICE ambulance even though transport by ambulance was not medically necessary.

       In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B) and Title 18, United States Code, Sections 2(a) and (b).

## COUNTS TWENTY EIGHT THROUGH THIRTY

### (Money Laundering )

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.  Paragraphs 1-16 and 18-27 of Count One are incorporated here.

    2.  On or about the dates listed below, in the Eastern District of Pennsylvania

and elsewhere, defendants

### ANNA MUDROVA and
### PENN CHOICE AMBULANCE INC.

knowingly engaged in a monetary transaction affecting interstate commerce in criminally

derived property of a value greater than $10,000, described more fully below, and such property

was derived from a specified unlawful activity, that is conspiracy to commit health care fraud, in

violation of Title 18, United States Code Section 1349:

| Count | TD Bank Check # | Approximate Date | Amount |
|-------|-----------------|------------------|--------|
| 28 | 1328 | 12/22/2011 | $ 28,377.06 |
| 29 | 1380 | 04/04/2012 | $ 18,193.78 |
| 30 | 1388 | 04/22/2012 | $ 19,402.78 |

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE #1

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      As a result of the violation of Title 18, United States Code, Section 1349

set forth in this indictment, defendants:

**ANNA MUDROVA,**
**YURY GERASYUK,**
a/k/a "Yury Mudrov,"
**MIKHAIL VASSERMAN,**
a/k/a "Miska,"
**IRINA VASSERMAN,**
**ALEKSANDR VASSERMAN,**
**VALERIY DAVYDCHIK,**
**KHUSEN AKHMEDOV,**
a/k/a "Hass," and
**PENN CHOICE AMBULANCE INC.**

shall forfeit to the United States of America any property that constitutes or is derived from gross

proceeds traceable to the commission of such offense(s), including, but not limited to:

        a.      Money Judgment: A sum of money equal to at least approximately $1,548,583.95 in United States Currency, for which the defendants are jointly and severally liable, and any other accounts and proceeds of these offenses;

        b.      All funds in TD Bank account #XXXX4428 (approximately $31,019.91) titled to Penn Choice Ambulance Inc.;

        c.      All funds in Wells Fargo account # xxxxxx7036 (approximately $5,937.20) titled to Mikhail Vasserman;

        d.      2003 Lincoln Navigator, Vehicle Identification Number XXXXXXXXXXXX46503, PA tag GLR-0011, registered in the name of Irina Vasserman, 851 Red Lion Road, Apt. E1, Philadelphia, PA;

25

    e.  2002 BMW, Vehicle Identification Number xxxxxxxxxxxx39523, PA tag HVV-0671, registered in the name of Best Ambulance Inc., 3021 Franks Road, Huntington Valley, PA.

  2.  If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court; or

    d.  has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

  All pursuant to Title 18, United States Code, Section 982(a)(7).

26

## NOTICE OF FORFEITURE #2

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violation of Title 18, United States Code, Section 1957 set forth in this indictment, defendants:

**ANNA MUDROVA and**
**PENN CHOICE AMBULANCE INC.**

shall forfeit to the United States of America any property, real or personal, involved in such offense, or any property traceable to such property.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the Court; or

        d.      has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

ZANE DAVID MEMEGER
United States Attorney

28